UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 1393, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | 1:17-cv-03920-RLY-DML |
| CLARK COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION, | ) ) ) | |
| Respondent. | ) | |

**ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Respondent, Clark County Rural Electric Membership Corporation ("Clark REMC") and Petitioner, International Brotherhood of Electrical Workers, Local 1393 ("Union") are parties to a collective bargaining agreement. On October 18, 2017, Clark REMC unilaterally implemented a residency rule which required all Union employees to live within 17 miles of its service territory. The Union promptly filed a grievance and eventually a demand for arbitration. After Clark REMC rejected the Union's demand, the Union filed a Petition to Compel Arbitration in this court. The parties' now cross-move for summary judgment. For the reasons set forth below, the court **GRANTS** the Union's Cross-Motion for Summary Judgment and **DENIES** Clark REMC's Motion for Summary Judgment.

**I.  Background**

The Union is a labor organization headquartered in Indianapolis, Indiana. (Filing No. 22-1, Affidavit of John Cochran ("Cochran Aff.") ¶ 2). It represents the

1

employees—mostly Linemen—at Clark REMC, an electric company located in Clark County, Indiana. (*Id.* ¶ 4).

In August 2016, Clark REMC notified the Union Steward that it would be implementing a new rule titled "Company Rules for Service Vehicles." (*Id.* ¶ 6; Filing 22-5, Proposed "Company Rules for Service Vehicles" rule[1]). This rule provided that all vehicles used by employees on service watch had to remain within a ten-minute driving distance of the REMC's service territory, and employees were required to take a company vehicle home when they were on service watch. (*Id.*). According to the Union, the rule implicitly imposed a residency requirement because employees are required to take their trucks home when they stand watch. (Cochran Aff. ¶ 6).

Upon being notified of the planned rule, the Union notified Clark REMC it considered the rule "unreasonable and in violation of the collective bargaining agreement" because (1) the CBA does not contain residency limitations and only provides that employees must remain "at home where they can be quickly and conveniently reached" when they are on watch, and (2) it would prevent employee Curtis Bussabarger from purchasing a home he had been planning to purchase. (Filing No. 22-6, August 23, 2016 Letter re Clark REMC's Proposed Living Requirement Policy). The Union informed Clark REMC that if it implemented the rule, the Union would "commence the grievance procedure under Article IV of the collective bargaining agreement." (*Id.*). In addition, since the CBA did not address residency requirements,

---

[1] This rule morphed into what the parties call the "Residency Rule."

2

the Union demanded that the REMC bargain with it before any residency requirement was implemented, in the hope that a mutually acceptable rule could be agreed to. (*Id*.; Cochran Aff. ¶ 7).

On November 14, 2016, the Union and Clark REMC met to discuss the proposed residency requirement. (Cochran Aff. ¶ 8). No agreement was reached, and no rule was implemented thereafter. (*Id*.).

On August 29, 2017, Clark REMC notified the Union that it wished to continue discussing the residency requirements. (*Id*. ¶ 9; Filing No. 17-2, Affidavit of David A. Vince ("Vince Aff.") ¶ 10). The parties met on September 25, 2017 for close to two hours. (*Id*. ¶¶ 10- 11). Clark REMC submitted three proposals, and the Union submitted two proposals. (Vince Aff. ¶ 12). Clark REMC's proposal required all employees to live within the Clark REMC service territory or "within a 17-mile radius (as the crow flies) from the center of service territory AND within Indiana AND within a county served by Clark [] REMC." (*Id.*, Ex. 5). Employees were given 60 days to relocate. (*Id.*). The Union's proposal required all employees to live in Indiana, in a county served by Clark REMC, and within a 25-mile radius from the center of the territory. (*Id.*).

On October 4, 2017, Clark REMC extended what it called its "Last, Best, and Final Offer" to the Union over the vehicle use and residency requirements by written letter. (*Id*. ¶ 13, Ex. 5, October 4, 2017, "Last, Best and Final Offer" letter). This offer was identical to the previous offer submitted by the Company, except it gave employees 90 days instead of 60 days to relocate. (Cochran Aff. ¶ 13).

The Union responded that a "last, best, and final" offer was "premature" because the parties were not at impasse. (Filing No. 22-8, October 9, 2017, Email ). The Union notified Clark REMC that if it was willing to continue negotiations, the Union would make a counter-offer. (*Id.*). The Union also notified Clark REMC that it considered the residency rule contained in the "Last, Best, and Final Offer" to be unreasonable, and that if Clark implements the rule over the Union's objection, it reserved its right to file a contractual grievance over it. (*Id.*).

On October 18, 2017, Clark REMC notified the Union it would be implementing the residency requirement (hereinafter the "Residency Rule") contained in its Last, Best, and Final Offer effective that day. (Filing No. 22-9, October 18, 2017, Letter). The Union filed a Grievance over the Residency Rule, protesting the "Company's unfair and discriminatory implementation" of the Rule. (Filing No. 22-4, Grievance). The Union also alleged that the Rule violated Articles I and III of the parties' CBA "and all others that apply." (*Id.*). Clark REMC refused to acknowledge the Union's grievance as an appropriate subject of the grievance and arbitration provisions of the CBA. (Vince Aff. ¶ 18). The Union thereafter submitted a written demand for arbitration. (*Id*. ¶ 20 and attached Ex. 10). Clark REMC rejected the demand. (*Id.* ¶ 21 and attached Ex. 11).

The Union's Petition to Compel Arbitration followed.

**II.     Discussion**

The Union argues its Grievance is arbitrable under the grievance procedure contained in Article IV of the CBA. Clark REMC argues it is not. In resolving this

4

issue, the court begins with the language of the arbitration clause set forth in Article IV of the CBA.

Article IV is defined as "Grievance Procedure." It broadly defines a grievance as "[a]ny difference arising between . . . the Union and the Company as to the interpretation or application of this Agreement, any of its terms or conditions . . . ." (Filing No. 17-1, CBA at 6). The third step provides for arbitration of grievances that cannot be resolved in the first two steps, stating: "Either party may demand arbitration to determine the settlement of the grievance by giving written notice of such demand to the other." (*Id.*).

The law regarding arbitrability is well-settled. When a federal court is asked to compel arbitration pursuant to Section 301 of the Labor-Management Relations Act, the question before the court is whether the arbitration clause in the parties' CBA covers the dispute. *Int'l Bhd. of Elec. Workers v. Ill. Bell Tel. Co.*, 491 F.3d 685, 687 (7th Cir. 2007). Unless the CBA provides otherwise, the court decides whether a dispute is subject to arbitration, not the arbitrator. *Id.*

"[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* at 687-88 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks omitted)).

### A. Impasse

Clark REMC argues that the Union's dispute is really one over whether a lawful impasse occurred during the parties' negotiations over the Residency Rule and is not one covered by Article IV's arbitration clause. As support for its argument, Clark REMC points to the Union's Grievance, which describes the "Nature of Complaint" as the "Company's unfair and discriminatory implementation" of the Residency Rule.

Under federal labor law, an impasse is defined as "that point at which the parties have exhausted the prospects of concluding an agreement and further discussions would be fruitless." *Laborers Health and Welfare Trust Fund v. Adv. Lightweight Concrete Co., Inc.*, 484 U.S. 539, 543 n.5 (1988); *see also Duffy Tool & Stamping, LLC v. N.L.R.B.*, 233 F.3d 995, 996 (7th Cir. 2000) (defining "impasse" as "deadlock"). If an employer unilaterally implements a change in policy before negotiations have reached impasse, it violates the National Labor Relations Act. *Richmond Recording Corp. v. N.L.R.B.*, 836 F.2d 289, 293 (7th Cir. 1987). "However, after an impasse has been reached, the employer can implement changes unilaterally as long as the changes were previously offered to the union." *Id.* The determination of whether an impasse has occurred is a question of fact, and one that must be decided by the National Labor Relations Board. *Id.*; *see also Carr v. Patrick Metals*, 351 Fed.Appx. 128, 129 (7th Cir. 2009) ("The National Labor Relations Board has primary jurisdiction over suits based on practices regulated by the National Labor Relations Act.").

Although the parties disagree as to whether an impasse occurred before Clark REMC implemented the Residency Rule, that issue is not before the court. (*Compare*

6

Vance Aff. ¶ 16 ("I believe and the Company asserts the parties were at an impasse"), *with* Cochran Aff. ¶ 17 ("The Union denies . . . the parties were at impasse at the time the Company unilaterally implemented the rule.")). Stated differently, the issue before the court is not the *process* by which Clark REMC implemented the Residency Rule; it is whether the Rule violates the terms and conditions of the CBA. *See United Steelworkers of Am., AFL-CIO v. ASARCO, Inc.*, 970 F.2d 1448, 1453 (5th Cir. 1992) ("The question whether the company's unilateral implementation of a testing policy violated the NLRA is entirely separate from the question whether the disputes that have arisen out of the testing policy are arbitrable."). Accordingly, the court finds the issue of impasse is irrelevant to the present dispute.

**B.      Whether the Dispute is Ripe**

Next, Clark REMC argues that, to date, it has taken no action to interpret or enforce the Residency Rule. Therefore, it argues, any attempt to compel arbitration over such matters would be premature.

A union need not delay a challenge to a new rule until an employee is disciplined for failing to comply with it. *See* Elkouri & Elkouri, *How Arbitration Works* 13-146 (8th ed. 2016 ("[R]ules promulgated unilaterally by the employer are subject to the grievance procedure, and a union need not delay its challenge until employees have been disciplined for failing to comply with them . . . ."). So long as the new rule violates the CBA, the union may grieve the rule's unilateral implementation. *Int'l Bhd. of Elec. Workers*, 491 F.3d at 690 (finding union's grievance over implementation of the "consumer performance management guidelines" subject to arbitration); *Oil, Chemical &*

7

*Atomic Workers Int'l Union v. Phillips 66 Co.*, 976 F.2d 277, 279 (5th Cir. 1992) (finding the union's grievance over the implementation of a substance control policy was subject to arbitration).

Here, the Union alleges the Residency Rule violates several provisions of the CBA, including Article III, the Management Rights Clause, and Article I, the Recognition Clause. It thus presents a controversy between the parties over the interpretation of the CBA. Therefore, the court finds the dispute is ripe for the grievance procedure.

    **C.    CBA Provisions**

        **1.    Article III, Section 1, Management Rights**

The Management Rights Clause provides, in relevant part:

> The Company shall have the sole and exclusive right and authority to manage and operate the Company's business and the direction of the work force; the right to hire, to transfer, to promote to supervisory positions . . . ; the right to establish policies not inconsistent with this agreement; and the right to establish, modify, and enforce work rules and regulations for safety and conduct, *subject to the grievance procedure* provisions of Article IV.

(CBA, Art. III, Section 1 at 3) (emphasis added).

Clark REMC implemented the Residency Rule "to provide timely and reliable electric service to Clark County REMC's membership in all areas of our large service territory." (*See* Filing No. 1-2, Company Rules for Residency). Article III, Section 1 grants it the right to enact such rules as a means of managing and operating its business. That right, however, is subject to the grievance procedure outlined in Article IV.

8

Therefore, the court finds Clark REMC's implementation of the Residency Rule is subject to Article IV's grievance procedure.

### 2. Article I, Recognition Clause

The Recognition Clause provides:

> The Company agrees to recognize the Union as the sole collective bargaining agent in all matters pertaining to wages, hours and other terms and conditions of employment for all employees who are included in the collective bargaining unit as described in the National Labor Relations Certification 9-RC-7226, dated June 12, 1967.

(CBA, Art. I at 2).

In *Int'l Bhd. of Elec. Workers*, *supra.*, the company and the union engaged in a series of discussions over the company's decision to implement new "consumer performance management guidelines." 491 F.3d at 686-87. The union filed a grievance and sought arbitration after attempts at bargaining over the new guidelines reached impasse. *Id.* at 690. The company refused on grounds that the grievance was not arbitrable under the terms of the parties' CBA. *Id.* at 687.

The CBA contained an arbitration clause, which extended to matters involving "[t]he interpretation or application of any of the terms or provisions of this Agreement, unless excluded by specific provisions of the Agreement." *Id.* In support of arbitration, the union claimed the new guidelines violated the CBA's recognition clause,[2] which is virtually identical to the Recognition Clause asserted here. *Id.* In a 2-1 decision, the Seventh Circuit affirmed the district court's order compelling arbitration because:

---

[2] The recognition clause read, in pertinent part: "The Company recognizes the Union as the exclusive bargaining agent for [the] employees of the Company . . . ." *Id.* at 687.

9

> An arbitrator could interpret the recognition clause, which obligates the Company to recognize the Union as the employees' sole bargaining representative, to require only that the Company refrain from dealing with other labor organizations. Alternatively, an arbitrator could interpret the recognition clause to prohibit the Company from making significant changes in the terms and conditions of employment without the consent of the Union. The recognition clause is susceptible to any number of interpretations that may impose duties of notice and negotiation upon the Company. The point is that such interpretation is the province of the arbitrator-not of this court. So long as the recognition clause is susceptible to an interpretation wherein the Company's actions have breached its duties, and the recognition clause is encompassed by the arbitration provision, we must compel arbitration.

*Id.* at 688-89 (citing *AT&T Techs.*, 475 U.S. at 650).

Here, as in *Int'l Bhd. of Elec.*, Clark REMC unilaterally implemented a policy during the term of the CBA after the parties bargained over the terms of the policy. And here, as in *Int'l Bhd. of Elec.*, the Union filed a grievance and sought arbitration, alleging a violation of the Recognition Clause. As its terms are nearly identical to the terms of the recognition clause in *Int'l Bhd. of Elec. Workers*, the court is compelled to follow case precedent and find that the Recognition Clause "is susceptible of an interpretation wherein the Company's actions have breached its duties." Arbitration of the dispute is required.

## III. Conclusion

The court holds that the Management Rights Clause and the Recognition Clause are adequate bases for arbitration in this case. Accordingly, the Union's Cross-Motion for Summary Judgment (Filing No. 20) is **GRANTED**, and Clark REMC's Motion for Summary Judgment (Filing No. 15) is **DENIED**. Clark REMC is **ORDERED** to submit

the subject Grievance to arbitration pursuant to the parties' collective bargaining agreement.

**SO ORDERED** this 24th day of April 2018.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.